This is the court. Call the next case please. People of the state of Illinois v. Alcoa County You ready? Let's have the appellant. We're ready. Good morning, your honors. Counsel, may it please the court. My name is Brian Reno with the Office of the State Appellant Defender, and I'm representing the appellant, Mr. Altai Thornton. May it please the court, your honors. The circuit court smoothly dismissed Thornton's pro se post-conviction pleadings, even though he raised an arguable claim that his 70-year sentence, which was imposed for offenses he committed at age 17, is an unconstitutional de facto life sentence. In summarily dismissing Thornton's petition, the circuit court did not mention this claim, nor did it mention the amended petition in which the claim was raised, perhaps explaining the court's premature dismissal of the claim. To survive the low bar of summarily dismissal, Thornton only needed to establish two things. First, that his sentence is arguably a de facto life sentence, and second, that the sentencing hearing arguably failed to consider youth and its attendant characteristics. Thornton easily met that burden in this case. It's arguable he has a de facto life sentence. We know the facts of the case. Let's get to the point. He received a 70-year sentence, and the Illinois Supreme Court has said, in buffer, that a sentence exceeding 40 years is a de facto life sentence. Yes, sir. And he was a juvenile, I believe, at the time that he committed this offense, and he can't be given a life sentence without certain findings being made. Yes, sir. So the question is, because he's a 50 percent entitlement to parole, the State is going to argue that he only received a 35-year sentence because he can be out in 35 years. Now, what's wrong there? Your Honor, this Court decided in Peacock that the sentence to look at in determining whether a juvenile defendant received a de facto life sentence is the full sentence imposed by the Court. So essentially, this Court has rejected the State's argument. It's a problem. But other districts have not. Well, correct, Your Honor, but the procedural posture of this case makes that somewhat irrelevant because we're at the first stage of post-conviction proceedings. For instance, if you disagree with Peacock, there's still arguable basis for Thornton's claim because Peacock hasn't been overruled yet by the Supreme Court. And, in fact, the Supreme Court might affirm Peacock. So is it your position, then, that in light of a conflict among various appellate districts, that as long as there's one appellate district's case that you can hang your hat on, that that creates enough of a justifiable claim to survive to get up to the next stage? Absolutely, Your Honor. The O'Hara standard is a very low standard. And I think it's – you can't say it's a frivolous claim if there is good law supporting it. Even if, ultimately, you might disagree with the position, if there is a good law supporting the claim, it's an arguable claim. Peacock was decided when? Peacock was decided recently in 2019. When was this case decided? Well, Your Honors, I haven't decided this case yet. But the – No, no. When was that? The Travis was a 1999 guilty plea? Yes. And when was the post-conviction petition denied? The post-conviction petition was denied, I believe it was in 2018? 2016, I'm sorry. 2016. I'd have to be able to move for the State Appellate Defender to be up here, wouldn't I? In 2018. Probably, yes. Okay. So Peacock wasn't in existence when this was decided. So we can't turn around and say that this judge entered an order that was in violation of a decision that had come down in the First District. What was the state of the law when he decided it? When the Circuit Court – well, again, we don't know that the Circuit Court actually considered this claim. It was never addressed. But the state of the law was – it was a – Buffer had been decided, though, at that point in time. Because that's a 2017 case, and this sentence is unconstitutional under Buffer. The Illinois Supreme Court has not yet addressed the question that Your Honor is asking about, and that is whether a good time should be considered as part of the sentence. So it's still arguable at that point as well. So it's not necessarily unconstitutional under Buffer if the Supreme Court – you're saying it was unconstitutional under Buffer at the time. Yes, Your Honor. It's arguably unconstitutional under Buffer because there's a 70-year sentence, and Buffer holds it a 40-year sentence as a fact of life sentence. And there's actually a purpose of post-conviction proceedings so that this claim can be developed because the law is changing in this area. So remanding this case back for further proceedings would allow the claim to develop. It's possible the Supreme Court takes Peacock and overrules it, in which case this claim would probably resolve itself at the second stage of proceedings, or the law could develop favorably in Mr. Thornton's – in his favor. So in that case, an adventure hearing would probably be warranted. But in either case, there are – there's no new Supreme Court case and a First District case that supports his claim that his 70-year sentence is an unconstitutional de facto life sentence. And because we're at the first stage of proceedings, his claim should proceed. I would think that the State's going to argue that under Buffer, the decision of 50 percent credit was not an issue and hadn't been decided. But the State's going to argue that other case law indicated that you are supposed to look at the credit that's going to be given. That's correct, Your Honor. I mean, the State thinks Buffer and Peacock were wrongly decided, and that's fine. But those are good law. That's good law. Those are opinions that are good law that support an argument basis for my client's claim. And the State will have a chance in the Peacock case, if the Court grants it, to argue that that case was wrongly decided. But this case isn't the place for that. These decisions stand. And not only that, I mean, the State is relying on Evans, the Supreme Court case they considered good time credit, which was abrogated by Buffer and the reasoning was expressly rejected in Buffer. So the State doesn't, I don't believe, have a strong argument in that regard. But at the same time, that's not really what's at issue here. That will be decided if the Supreme Court takes Peacock. So for purposes of this argument, Buffer and Peacock, because they're good law, form an argument basis for my client's claim that a 70-year sentence is an unconstitutional de facto life sentence. You also take issue with the circuit court's handling of the recharacterization. Yes, Your Honor. Of your client's filing. Can you address that briefly, too? Yes, absolutely. My client requested that his petition for his PRJ be recharacterized as a pro se post conviction petition. The State then asked for a Shellstrom admonishments and the Court gave deficient admonishments. The State acknowledges that on appeal but is now arguing that there should have been no admonishments. It contradicts its position below, relying on a Fourth District case. I'm with you. I read it, too. Okay. So the question then becomes, all right, is you're arguing that the insufficient admonishments by themselves create a reason for us to reverse, correct? For the admonishments. For the admonishments. That would be a separate issue. I'm here where the defendant himself was the one who asked for the recharacterization. Isn't the purpose of the Shellstrom doctrine fulfilled anyway? No, Your Honor. The purpose of the Shellstrom doctrine, excuse me, is to protect pro se. That's what it was. It wasn't unsuisponting by the Court. Yeah, that's correct, Your Honor. But the purpose of Shellstrom, as it's stated in Shellstrom, is to protect pro se litigants who don't know the law. So the full admonishments would be necessary because my client doesn't really know what he's doing when he's requesting this characterization. He has no legal training whatsoever and would need the same kind of admonishment that a pro se defendant would need if the Court suisponte recharacterized the petition. And actually, the Fourth District case itself relies on another case that I believe the Fourth District case plan misinterpreted. In that case, I believe it was Stoffel, the Court found that no admonishments were required and it was because counsel had already been appointed and the defendant was no longer a pro se litigant. Bland looked at that and said Stoffel holds that if you request recharacterization, you're not entitled to the admonishments. But that's simply not what the Stoffel Court found. It was because the defendant had been appointed counsel. So Ford was still pro se. He was not represented by counsel when he made his request. And as the State acknowledged below, should have been admonished. Excuse me. If there are no further questions, Your Honors, I would ask that you reverse the Circuit Court's ruling and remand this case. Thank you. Good morning. Assistant State's Attorney Janet Mahoney on behalf of the people of the State of Illinois. I will be addressing the sentencing issue today and my co-counsel will be addressing the recharacterization issue. Buffer and Miller both support the State's position in that good time credit should be considered when calculating the length of the sentence for this issue. Neither case talks about good time credit. They don't talk about good time credit. They talk about the meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. And that is exactly what good time credit does. Good time credit is you shall get a day of credit and your sentence shall be reduced by that day of credit, assuming you behave in jail. If you behave in jail, that's maturity rehabilitative potential. And he's entitled to that good time credit, and that reduces it to 35 years. He gets his good time credit with the sufferance of the warden. Not entirely true. So, number one, he automatically gets it via statute. The statute awards the good time credit. The Department of Corrections — He's entitled to 50 percent. Correct. Under this charge if he does certain things. If he behaves in jail. Yeah, and the Department of Corrections is the one that determines whether he behaved. Not a judge, not a jury. And they'll make a determination on whether they're going to let him out after 50. Prisoners have a due process interest and right in the disciplinary process. And the Department of Corrections regulations provide for their due process right. And it's two-pronged. Number nine. Don't you think the buffer and the cases that follow it agree with your position? The Supreme Court would have said that a sentence which cannot be completed in less than 40 years is a de facto life sentence. Well, I think —  The language that they take from Miller, which is taken from Graham, which is very important and very powerful. It's not in there just as fluff. Meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Also, the state does not need to guarantee eventual release, just a meaningful opportunity for release. And the reason why that language is used in that way is because we have many people in prison under different sentencing schemes. So if you tailor it murally, like Buffer had to in their case, to one type of sentence that wasn't entitled to good time credit, you wouldn't be covering the people who are. And the suggestion that you don't consider the good time credit would lead to an absurdity. Because you have someone today committing a murder, who's a juvenile, who would only — who would get a 40-year sentence, doesn't get day-for-day good time credit, versus our defendant who committed a murder, that was brutal and heinous, who can only, according to what the defense counsel is arguing, get 40 years, still entitled to good time credit, and gets out after 20 years. And that would result in an absurdity. What we have here is language from Buffer, language from Miller, that speaks to the meaningful opportunity to obtain release. And that — Isn't it correct, Ms. Mahoney, that the record before us is silent as to whether or not he has actually been awarded any good credit at all? That would not be before us. That is not — it's the opportunity to. And again, the Department of Corrections and Regulations — So it doesn't have to be guaranteed. It only has to be an opportunity. Correct. They use the word opportunity. In fact, I believe Miller specifically states that in this analysis, it doesn't need to be a guarantee of release. And that is partially where — one of the many reasons where Peacock went wrong, where they were looking for a guarantee of release, that somehow the Department of Corrections can operate in an arbitrary — arbitrary manner, and they cannot. Because the second point with the Department of Corrections is that they may not revoke more than 30 days of good time credit in a single year without approval of the Prisoner Review Board, which is an entirely different body. That's a revocation of good time that's already been granted. Good time credit is automatic. They're the ones that grant the good time. No, they aren't. The statute does. No, the statute says he's entitled to 50%. It doesn't say he gets 50% for every day he does. Or for every day he does, he gets one day good time. The statute says that a defendant shall receive one day of good time credit for each day of service in prison, which shall reduce by one day the defendant's period of incarceration. That is a direct aim. No, he gets it. And if he doesn't behave, that's when it can be revoked. So he automatically gets it. It's only revoked if he misbehaves. And that revocation is subject to a due process hearing for the defendant in front of the Prisoner Committee who's going to revoke it. At which point in this very long time frame is the final decision made as to whether or not he gets good time for a particular segment of his incarceration? I would believe it's being done on a day-by-day basis. That today you misbehaved, and now we're going to have a hearing, and now you're going to get a written decision indicating why we're revoking based on a serious violation. It's not. You didn't get to that. I'm going to read to you a passage from PICA. Can you tell me what's wrong with this? The Illinois Department of Correction has a right to revoke good conduct credit for disciplinary infractions, and an inmate's right to receive the credit is contingent upon his good behavior while in prison. The IDOC ultimately has discretion as to whether the defendant will be awarded any credit. And the trial court has no control over it. The IDOC does not have discretion to award it. It is given, shall be given. So the PICA court was wrong. Correct. Okay. Correct. So you don't want us to follow PICA? Absolutely not. And this court can have their own decision that disagrees with PICA. Well, there's no question we do. Unless there are any other questions about the sentencing issue, counsel will address the remainder. Go on, Your Honors. May it please the Court. Mary Hudson on behalf of the State. The intent of Shellstrom was to protect pro se litigants, to treat them fairly. In this case, it was the defendant who wanted to recharacterize his petition. It was the defendant who told the court that he filed a motion to recharacterize his petition to be a post-conviction petition because he was alleging ineffective assistance of counsel. He was alleging constitutional claims. He realized that 21401 was an improper venue. The defendant wanted to recharacterize it, and at the time that the defendant told the court he sought to recharacterize it, the court questioned the defendant and admonished him. Your opponent took the position in answering my question on this that the defendant is presumed not to be a lawyer, and therefore, notwithstanding the fact that he himself asked for the recharacterization, cannot be presumed to know all the intricacies of what that decision would have for him, and that therefore the admonishment should be given regardless. But in this case, the admonishments were given. The trial court, once the defendant told him he wanted to recharacterize, the trial court said, well, you want to recharacterize this? This is what you need to know. The trial court specifically told him that you need to realize that this is your one and only time. This is the only time that you're allowed to do this. If you seek to do this, you have to raise every issue that you want in this post-conviction petition. He also said that you need to, when you will not be given another chance, that if you fail to raise an issue that you believe should be in this petition, then you don't get another chance to come. This mimicked the Shellstrom admonishments. Not only did the court advise him, one and only, you don't add, you don't include everything in there, then they are rigged, that you cannot come later and tell us, oh, I forgot to include something. After saying that, the defendant filed an amended post-conviction petition. He included all of his claims in 214-01, and he added two additional claims, a due process violation regarding his extended term sentence and a warrant violation. When the court ruled on that, the court specifically said at the outset of the ruling, I'm considering the post-conviction petition. The court then specifically looked at the due process violation and said, I've looked at the due process violation. The defendant has signed a number of cases which is different from the 214-01. In the amended petition, the court or the defendant signed at least 16 cases. Additionally, he attached a sheet at the end of it saying additional cases. So the defendant recharacterized this on his own. He was not entitled to the Shellstrom warrants because they are for when the trial court sui sponte does it. And in Shellstrom, as you all know, the defendant was not present. He was not given notice that his plea was being recharacterized, and he was not given the opportunity to amend it. This case is different from that. This case is different from the cases the defendant signed at the Stewart case. This case is exactly like Glenn. The defendant told the court he wanted to recharacterize it. The court confirmed that he wanted to recharacterize it. But in addition, he was provided with information. This was his one and only. You would concede, I take it, that if we decided against you on the sentencing issue, we don't have to reach Shellstrom? Yes, Your Honor. It is our position, though, that the defendant did recharacterize. And we ask, if you have no further questions, that you affirm the circuit court's summary dismissal of the defendant's post-conviction petition. Thank you. Thank you. Thank you, Your Honors. Just briefly, excuse me. I just wanted to address the State's argument that the good time credit is guaranteed. It's absolutely not. The main reason PCOT found that reviewing courts should look at the full sentence imposed by the trial court is because there's no guarantee or way to determine how much good credit would be available. In this case, we don't know how much good credit has already been awarded or revoked. We have no idea. And these are open questions that would be good for an evidentiary hearing. So, you know, PCOT was not wrong about how the credit is awarded. It's an uncertain figure that shouldn't be looked at. The full sentence here, which is what trial courts consider when they're imposing a sentence, is what should be considered as a de facto 70-year sentence. And just about the recharacterization issue, the State concedes that the admonishments were deficient in that.  I'm sorry. Go ahead. Go ahead. Well, they did list what the court did admonish my client about, but they don't dispute, I guess, that he was never admonished about the restrictions on successive petitions or the ability to file an amended petition. And it's unclear whether the court looked at the amended petition that was filed, but my client did also cite cases in his pro se petition, one explicitly referenced by the circuit court. What about the State's meaningful opportunity argument? Well, under PCOT and Buffer, the law as it exists is that the meaningful opportunity must be provided by the court, by the sentence imposed by the court, which is a 70-year sentence in this case. And the reason is because there's no guarantee that my client served 35 years or 40 years or 50 years or anything other than 70 years. So, you know, there's no meaningful opportunity provided by the 70-year sentence, which is what courts need to consider under PCOT. If there are no further questions, Your Honors, I ask that you reverse the circuit court's ruling and disclose for further post-conviction proceedings. Thank you, Counsel. The matter will be taken under advisement and an opinion will be issued to the courts.